**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

SANDRA THOMAS, ON BEHALF OF
11   TERRELL THOMAS,                        No   C-04-01276 VRW

12            Plaintiff                          ORDER

13            v

14

JO ANNE B BARNHART, COMMISSIONER
15   OF SOCIAL SECURITY,

16            Defendant.
     _____/
17

18

19        Plaintiff Sandra Thomas, the mother and legal guardian of

20   Terrell Thomas ("Terrell"), appeals from the decision of the Social

21   Security Administration ("SSA") denying Terrell social security

22   disability benefits.  Plaintiff contends that the SSA erred in

23   concluding that Terrell did not have attention deficit

24   hyperactivity disorder ("ADHD") and in failing to have a

25   pediatrician or other appropriate specialist evaluate Terrell's

26   entire record.  The court considers cross motions for summary

27   judgment.  Pl Mot (Doc # 5); Def Mot (Doc # 6).  Based upon review

28   \\

of the administrative record, the court DENIES plaintiff's motion and GRANTS defendant's motion.

I

A

Terrell is an eleven-year-old boy born on June 4, 1994. Administrative Record ("AR") (Doc # 4) at 231.  Terrell has a history of medical conditions, including renal tubular acidosis ("RTA") and craniosynostosis, and plaintiff alleges that Terrell has learning disabilities and ADHD.  AR at 335-36.  Terrell currently attends elementary school in Oakland.  AR at 338. Terrell has a twin brother who also has RTA but does not suffer from craniosynostosis, learning disabilities or ADHD.  AR at 72.

Terrell was diagnosed with RTA in October 1994 after experiencing developmental difficulties in the months after his birth.  AR at 83.  RTA is a condition in which the kidneys fail to process sodium bicarbonate properly.  Daily supplements of sodium bicarbonate effectively manage RTA; Terrell took sodium bicarbonate supplements until he was five.  AR at 155, 324.  Terrell does not currently experience adverse symptoms from RTA.  AR at 237.

Terrell underwent surgery to correct his craniosynostosis on March 12, 1997.  AR at 137.  Craniosynostosis is a condition in which plates of the skull fuse together, producing an irregularly-shaped skull.  AR at 34.  In August 1997, Terrell underwent an additional surgery to remove hardware that was causing irritation in the site of the original surgery.  Id.  A prominent scar runs across the front of Terrell's skull from ear to ear and his skull remains irregularly shaped.  AR at 167, 196-97.  Terrell does not

United States District Court<br>For the Northern District of California

2

United States District Court

For the Northern District of California

suffer any medical complications from craniosynostosis or the surgeries, although peers allegedly tease Terrell about the scar and shape of his head.  AR at 233.

Consulting pediatrician Julian Davis, MD, examined Terrell in October 1997 at the request of the SSA and found Terrell to be delayed compared to most children his age and his twin brother in particular.  AR at 144.  Dr Davis was able to compare Terrell with his twin brother; Terrell's twin had clearer speech and could balance on one foot, unlike Terrell.  Id.  Dr Davis concluded that Terrell's prospects for normal development were good with appropriate therapy and educational experience.  Id.

Consulting psychologist Cecilia Hardey, PhD, attempted to examine Terrell in February 1998 but was unable to complete a full examination because of Terrell's behavior.  AR at 167.  Terrell screamed, hit, called the examiner "dummy" and "stupid" and "completely refused to participate in all but a few of the tasks required."  AR at 167, 169.  Dr Hardey administered the McCarthy Scales of Children's Abilities to Terrell.  AR at 169.  Terrell scored below the first percentile on all the test's subparts, but Dr Hardey did not consider the test scores to be "an adequate reflection of this youngster's cognitive and developmental abilities" because of Terrell's lack of cooperation.  Id.  Dr Hardey tentatively concluded that Terrell had borderline to low average intelligence and recommended guidance and possibly behavioral counseling to equip plaintiff with better parenting skills.  AR at 170.

Consulting psychologist Joanna Koulianos, PhD, examined Terrell in January 2002 at the request of the SSA and found that

United States District Court

For the Northern District of California

1   Terrell had normal communication, social and motor skills, as well

2   as adequate intelligence and ability to pay attention and

3   concentrate.  AR at 320.  Dr Koulianos administered a complete

4   psychological evaluation in addition to the Wechsler Intelligence

5   Scale for Children - III ("WISC-III") and Vineland Adaptive

6   Behavior Scales ("VABS") tests.  Terrell's performance on the WISC-

7   III test placed his IQ at 78, which Dr Koulianos regarded as

8   adequate.  AR at 320, 322.  The VABS test found that Terrell was

9   delayed in several areas.  Terrell, who was 7.7 years old at the

10  time of the test, had an age equivalency of 5.11 in his

11  communication abilities, 5.10 in his daily living skills and 5.3 in

12  his socialization skills.  AR at 322.  While these results were

13  "moderately low," Dr Koulianos again described them as adequate.

14  AR at 320.  Dr Koulianos noted that plaintiff's description of

15  Terrell's behavior raised a suspicion of ADHD, but "no compelling

16  evidence" substantiated such a finding.  AR at 321.  Dr Koulianos

17  recommended a behaviorally-based management program to address

18  Terrell's behavioral difficulties.  Id.

19          Consulting clinical psychologist Kate Mountain, PhD,

20  examined Terrell in May 2002.  AR at 324-29.  Dr Mountain found

21  that Terrell had borderline to low average intellectual abilities

22  and found language problems consistent with language-based learning

23  disorder.  AR at 328.  Dr Mountain administered an impressive

24  battery of tests, including:  the WISC-III test, the Wechsler

25  Individual Achievement Test ("WIAT"); a developmental

26  neuropsychological assessment ("NEPSY"); the Individual Variables

27  of Attention Continuous Performance Test ("IVA"); the BEERY Test of

28  \\

**4**

Visual Motor Integration; and the California Verbal Learning Test: Children's Version ("CVLT-C").  AR at 324.

Terrell's performance on the WISC-III test placed his IQ at 81, slightly higher than the WISC-III administered by Dr Koulianos.  AR at 326.  Terrell scored at or around the mean on the WISC-III subparts testing arithmetic, digit span and picture arrangement and around two standard deviations below the mean on comprehension and visual spatial skills.  Id.  On the WIAT, Terrell scored near or slightly below average on all the subtests; all his scores were within two standard deviations of the mean, with several approaching the mean.  AR at 327.  On the NEPSY, Terrell scored two to three standard deviations below mean on several verbal subtests.

Dr Mountain interpreted Terrell's test results as indicative of "significant weaknesses in phonological processing" and likely "phonological deficits."  Id.  Terrell also performed poorly on the visual motor skills test; Dr Mountain found Terrell's abilities to be equivalent to those of an average 5-year-old and concluded that poor visual motor skills, as reflected in difficulties with handwriting, could account for Terrell's "reluctance to do his schoolwork and homework."  AR at 328.

Terrell also demonstrated problems with auditory attention, although he performed adequately in the auditory attention section of the NEPSY and fair in the planning and response control subtests of the IVA.  Id.  On the IVA, "a computerized continuous performance measure of visual and auditory attention, Terrell had significant problems."  Id.  Dr Mountain found the test results and plaintiff's descriptions of Terrell's

5

United States District Court

For the Northern District of California

behavior to be consistent with symptoms of ADHD, although these symptoms were not evident in all situations, such as when Terrell was presented with small amounts of information.  Id.

Dr Mountain recommended changes in Terrell's school environment and provided plaintiff with a list of several resources for parents of children with ADHD.  AR at 329.  Dr Mountain also suggested that Terrell's parents discuss a "trial of stimulant medication for the symptoms of ADHD."  Id.  Dr Sheldon Orloff, Terrell's treating physician, later prescribed Terrell Ritalin, a medication to treat the symptoms of ADHD.  AR at 225.

Shelby Irwin, Terrell's second grade teacher, completed a questionnaire about Terrell's school performance on January 1, 2002.  AR at 301-8.  Irwin wrote that Terrell had a short attention span and low skill levels in reading and language arts, but otherwise Terrell was like any other child in the classroom and was "a normal functioning child."  AR at 308.

The Oakland Unified School District assessed Terrell for several weeks in October 2002 to determine whether Terrell qualified for an "individualized education program" ("IEP") — essentially, special education — and, if so, what Terrell's IEP would include.  AR at 195-224.  This assessment, the most thorough evaluation of Terrell in the administrative record, consisted of a battery of eight tests, a review of Terrell's medical record and observations from Terrell's third-grade general education teacher, a special education teacher, a speech therapist and a psychologist. AR at 213.  The IEP team, writing in a report issued October 23, 2002, determined that Terrell would benefit from 105 minutes daily with a special education teacher and structured academic goals for

**United States District Court**
For the Northern District of California

the following year.  AR at 210-14.  Terrell generally performed well on tests of arithmetic and verbal reasoning and generally performed poorly on spatial memory, general memory, reading comprehension and basic reading tests.  The IEP team attributed Terrell's difficulties to a disorder in Terrell's visual processing.  AR at 215.

Concerning Terrell's ability to pay attention, the IEP team found Terrell to be easily "distractible and fidgety" throughout the assessment.  AR at 203, 220, 224.  Terrell's third grade teacher described Terrell as "typically easily distracted" and that proximity to the front of the room "does not have an effect on his distractability."  AR at 199.  No conclusion was reached regarding whether Terrell had ADHD.


**B**

Plaintiff applied for Child's Supplemental Security Income disability benefits on behalf of Terrell in June 1997.  AR at 71-74.  The SSA denied the application initially and upon reconsideration.  AR at 47-55.  Plaintiff requested a hearing before an administrative law judge ("ALJ") which was held on February 11, 1999.  Plaintiff and nonexamining consulting pediatrician Gerhard Nellhaus, MD, testified.  AR 17-44.  Dr Nellhaus found that Terrell's RTA and craniosynostosis were under control.  Also, Dr Nellhaus concluded that Terrell had "neither a marked nor an extreme limitation anywhere," despite minor developmental delays.  AR at 39.  The ALJ denied the application and the SSA Appeals Council denied review, making the ALJ's decision final.  AR at 3-4, 7-15.  Plaintiff filed a lawsuit in

this court challenging the ALJ's decision.  Pursuant to stipulation between the parties, this court remanded the case for further development of the record.  AR at 238-39.

On remand additional evidence was entered into the record and a hearing was held on June 27, 2002.  AR at 323-29.  Plaintiff and nonexamining consulting pediatrician Moses Grossman, MD, testified at the hearing.  AR at 330-55.  Dr Grossman's curriculum vitae, stated by the ALJ to be part of the administrative record, is absent from the records provided to the court.  In the absence of that document, the court takes notice of the public record of Dr Grossman's credentials as published in the United States Representative Nancy Pelosi's tribute to Dr Grossman before the October 5, 1989, opening of the Moses Grossman Child Protection Center at San Francisco General Hospital, which reflects that Dr Grossman was the former chief of pediatrics at San Francisco General Hospital and a professor of pediatrics at the University of California, San Francisco School of Medicine since 1951.  135 Cong Rec E 3303.

Dr Grossman reviewed Terrell's entire medical record available as of June 27, 2002, including the reports of the doctors treating Terrell following his surgery, the reports of Dr Davis, Dr Hardey and Dr Koulianos and the questionnaire completed by Terrell's second grade teacher.  AR at 348.  Concerning whether Terrell had ADHD, Dr Grossman said that Terrell "clearly does not meet the very strict definition of attention deficit disorder either medically or in the listings, either way."  AR at 349.  Dr Grossman also "did not think that [Terrell] met the listings or equaled them or functionally equaled them based on the record and

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

including what [plaintiff] said," although he did express interest
in seeing the next psychological report.  AR at 353.

Shortly after the hearing, plaintiff submitted Dr
Mountain's report to the ALJ.  The ALJ reviewed Terrell's medical
history, including Dr Mountain's report, and denied the application
on December 5, 2002.  AR at 227-37.

The ALJ conducted a three-step evaluation to determine
whether Terrell qualified for benefits.  The ALJ asked:  (1)
whether the claimant has engaged in substantial gainful activity;
(2) whether the claimant has a medically determinable impairment
that is "severe" within in the meaning of the regulations and has
lasted or is expected to last more than twelve months or end in
death; and (3) whether the claimant has an impairment which "meets,
medically equals, or functionally equals" one of the listed
impairments described in Appendix 1 of the regulations.  20 CFR §
416.924(b-c); 20 CFR, Part 404, Subpart P, Appendix 1.  Applying
the three-step evaluation to Terrell, the ALJ found that:  (1)
Terrell has never engaged in substantial gainful activity; (2)
Terrell has several severe impairments, including RTS,
craniosynostosis and language-based learning disorder; and (3) none
of Terrell's impairments meets, equals, or functionally equals any
of the listed impairments in Appendix 1.  AR at 232.

In evaluating whether Terrell's impairments functionally
equal any of the listed impairments in Appendix 1, the ALJ
considered whether Terrell is "markedly impaired" in two domains of
functioning or "extremely impaired" in just one pursuant to 20 CFR
§ 416.926a.  AR at 232.  The domains of functioning are:  (1)
acquiring and using information; (2) attending and completing

9

United States District Court

For the Northern District of California

tasks; (3) interacting and relating with others; (4) moving about
and manipulating objects; (5) caring for oneself; and (6) health
and physical well-being.  20 CFR § 416.926a.  The ALJ accepted the
testimony of Dr Grossman that Terrell was not markedly or extremely
impaired in any of the domains of functioning.  AR at 232.

In his decision, the ALJ wrote that he "appreciate[d] the
fact that the claimant has some problems, but disability requires
more than that.  I feel confident in concluding that he is not
'disabled' on the information before me."  AR at 236.  The ALJ
acknowledged the portions of Terrell's medical records that
supported plaintiff's claim, including Dr Davis's finding that
Terrell was developmentally delayed, Dr Koulianos' observation that
Terrell performed poorly on certain tests and Dr Mountain's
conclusions that Terrell had language-based learning disorder and
exhibited symptoms of ADHD.  AR at 233-34.

The ALJ also discussed the plentiful evidence that
Terrell is not disabled within the meaning of the Social Security
Act.  The ALJ referenced Dr Davis's view that Terrell's prognosis
for overcoming his developmental delays was "probably good with
appropriate therapy," Dr Koulianos' finding that Terrell was normal
or adequate in every area tested and Dr Mountain's finding that
Terrell's symptoms of ADHD were inconsistent.  Id.

The ALJ concluded from his observations at the June 27,
2002, hearing and from the reports of Dr Hardey and Dr Koulianos
that Terrell's problems were mostly behaviorally-based and would be
addressed most properly by a behavioral program for Terrell and
better parenting skills for plaintiff.  AR at 235.  The ALJ
"believe[d] that it would be good or healthy for [Terrell] to be

10

United States District Court

For the Northern District of California

1  encouraged to function appropriately, and that it would <u>not</u> be good
2  for him if he were encouraged to behave as though he were disabled
3  or functionally disturbed."  AR at 236 (emphasis in original).

4          Plaintiff requested review and submitted Dr Orloff's
5  prescription for Ritalin and the Oakland Unified School District's
6  October 23, 2002, IEP assessment to the SSA Appeals Council.  AR at
7  195-225.  The Appeals Council denied the request for review, making
8  the ALJ's decision final.  AR at 192-93.

9          On April 4, 2004, plaintiff filed this action seeking
10 review of the SSA's denial of her application.  Plaintiff alleges
11 that Terrell is disabled and entitled to benefits because of RTS,
12 craniosynostosis, language-based learning disorder and ADHD.
13 Plaintiff contends that the final decision of the ALJ is in error
14 because:  (1) the ALJ's finding that Terrell did not have ADHD is
15 not supported by substantial evidence in the record as a whole; (2)
16 the ALJ failed to consider the effects of ADHD on Terrell's
17 functioning; and (3) the ALJ committed legal error by failing to
18 make a reasonable effort to obtain a case evaluation, based on the
19 record in its entirety, from a pediatrician or other appropriate
20 specialist.

21

22                                    II

23          The court's jurisdiction is limited to determining
24 whether the SSA's denial of benefits is supported by substantial
25 evidence in the administrative record.  42 USC § 405(g).  A
26 district court may overturn a decision to deny benefits only if the
27 decision is not supported by substantial evidence or if the
28 decision is based on legal error.  See <u>Andrews v Shalala</u>, 53 F3d

United States District Court

For the Northern District of California

1035, 1039 (9th Cir 1995); <u>Magallanes v Bowen</u>, 881 F2d 747, 750 (9th Cir 1989).  The Ninth Circuit defines "substantial evidence" as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Andrews</u>, 53 F3d at 1039.  Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ.  See id; <u>Magallanes</u>, 881 F2d at 750.  The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation."  <u>Andrews</u>, 53 F3d at 1040.

## III

### A

In 1996, Congress introduced the Personal Responsibility and Work Opportunity Reconciliation Act, which provided the current standard for determining children's eligibility for social security disability benefits.  Pub L No 104-193, 110 Stat 2105.  A child is otherwise eligible under the Social Security Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 USC § 1382c(a)(3)(C).

### B

#### 1

Plaintiff contends that Terrell is disabled under the Social Security Act and that the ALJ erred by not considering the

1  effects of ADHD on Terrell's functioning.  Specifically, plaintiff

2  argues that Terrell's medical history contradicts the ALJ's

3  conclusion that Terrell did not have ADHD and that the ALJ failed

4  to consider the functional effects of ADHD in combination with all

5  of Terrell's impairments, citing <u>Hammock v Bowen</u>, 867 F2d 1209,

6  1214 (9th Cir 1989) (finding that the ALJ committed legal error by

7  not considering the effects of plaintiff's impairments in

8  combination with each other).  After reviewing the record in its

9  entirety, the court determines that substantial evidence supports

10  the ALJ's conclusion that Terrell did not have ADHD and that the

11  ALJ properly considered Terrell's impairments in combination in

12  determining that Terrell is not disabled.

13      For Terrell's condition to meet the SSA's criteria for

14  ADHD, he must have medically-documented marked inattention,

15  impulsiveness and hyperactivity and medically-documented marked

16  impairments in two of following areas:  (1) age-appropriate

17  cognitive/communication functioning; (2) age-appropriate social

18  functioning; (3) age-appropriate personal functioning; and (4)

19  ability to maintain concentration, persistence or pace.  20 CFR

20  part 404, subpart P, appendix 1, section A, 112.11.

21      Plaintiff points to the reports of Dr Koulianos and Dr

22  Mountain as evidence that Terrell has ADHD, but these reports do

23  not offer significant support for her position.  Dr Koulianos found

24  "no compelling evidence" of ADHD in her January 2002 examination of

25  Terrell, although she did note that plaintiff's description of

26  Terrell's behavior raised a suspicion of ADHD.  AR at 321.  Dr

27  Koulianos recommended a behaviorally-based management program for

28  Terrell's behavioral difficulties, rather than medication or

13

United States District Court

For the Northern District of California

1   programs for ADHD.  Id.  The ALJ noted Dr Koulianos' finding that

2   Terrell's attention and concentration abilities were within normal

3   limits and directly quoted her report's conclusion, specifically

4   made in response to concerns raised by plaintiff during the

5   consultation, that "there is no compelling evidence" to

6   substantiate a diagnosis of ADHD.  AR at 233-34.  Dr Mountain found

7   that Terrell exhibited symptoms of ADHD in her May 2002

8   examination, but observed that the symptoms were inconsistent given

9   the situation.  AR at 328.  Dr Mountain recommended that Terrell

10  try medication to treat the symptoms of ADHD and that plaintiff

11  read materials for parents of children with ADHD.  AR at 329.  The

12  ALJ noted that Dr Mountain found only inconsistent evidence of

13  ADHD.  AR at 234.

14      Other evidence in the record also supports the ALJ's

15  determination that Terrell did not have ADHD.  Terrell's second

16  grade teacher, in the January 14, 2002, questionnaire she

17  completed, wrote that "Terrell is a normal functioning child who

18  has a short attention span" and Terrell has only "a slight problem"

19  with most attention and focusing tasks.  AR at 303, 308.  Dr

20  Grossman remarked that Terrell "clearly does not meet the very

21  strict definition of attention deficit disorder either medically or

22  in the listings, either way."  AR at 349.

23      The administrative record contains "more than a mere

24  scintilla" of evidence that Terrell did not have marked

25  inattention, impulsiveness or hyperactivity; "substantial evidence"

26  accordingly supports the ALJ's conclusion that Terrell did not have

27  ADHD.  Andrews, 53 F3d at 1039.

28  \\

14

United States District Court

For the Northern District of California

1    As for plaintiff's contention that the ALJ failed to
2    assess the functional effects of ADHD in combination with Terrell's
3    other impairments, the ALJ did not err since the administrative
4    record supports his conclusion that Terrell did not have ADHD.  To
5    the extent Terrell's medical record suggests attention deficit, the
6    ALJ properly considered Terrell's "mild attention deficit" in the
7    determination that Terrell is not disabled.  AR at 236.

8

9                                   2

10    Plaintiff also contends that the ALJ committed legal
11    error by failing to have Dr Grossman, who testified at the June 27,
12    2002, hearing, evaluate Terrell's entire medical record because Dr
13    Grossman did not review (1) Dr Mountain's May 2002 report or (2)
14    the October 2002 IEP assessment.  AR at 353.  Plaintiff argues, in
15    essence, that 42 USC § 1382c(a)(3)(I) requires that a pediatrician
16    or other appropriate specialist conduct a new case evaluation every
17    time a minor applicant's medical record changes and that the Ninth
18    Circuit adopted this interpretation of the statute in Howard ex rel
19    Wolff v Barnhart, 341 F3d 1006 (9th Cir 2003).

20    42 USC § 1382c(a)(3)(I) states that in determining the
21    disability of a minor, "the Commissioner of Social Security shall
22    make reasonable efforts to ensure that a qualified pediatrician or
23    other individual who specializes in a field of medicine appropriate
24    to the disability of the individual (as determined by the
25    Commissioner of Social Security) evaluates the case of such
26    individual."

27    In Howard, the Ninth Circuit interpreted this provision
28    to require that the ALJ have a pediatrician or other appropriate

United States District Court

For the Northern District of California

specialist review a minor's medical record "in its entirety" and form a case evaluation from this review, although this requirement appears to be somewhat flexible as to when such review must take place. Howard, 341 F3d at 1014. Specifically, the Ninth Circuit stated that the ALJ in Howard may have "achieved substantial compliance with the statute" by having two physicians form case evaluations fifteen and twenty-five months, respectively, before the ALJ handed down his decision. Id. Neither physician reviewed new developments in the applicant's medical record after completing the case evaluation. Id at 1009-1010. Although the Ninth Circuit noted uncertainty whether the physicians were appropriate specialists within the meaning of the 42 USC § 1382c(a)(3)(I), the court stated that the requirements of the statute were otherwise satisfied. Howard, 341 F3d at 1014. Since the Ninth Circuit could not determine whether the two physicians were pediatricians or other appropriate specialists, the court remanded the case to the ALJ for further proceedings. Id at 1015.

Unlike in Howard, the ALJ in this case had an appropriate specialist, Dr Grossman, review Terrell's medical records. AR at 348-53. Plaintiff does not dispute that Dr Grossman is a pediatrician within the meaning of 42 USC § 1382c(a)(3)(I). Rather, plaintiff contends that 42 USC § 1382c(a)(3)(I) requires Dr Grossman or another appropriate specialist to review Terrell's entire medical record as it develops. Such an interpretation of 42 USC § 1382c(a)(3)(I) does not find support in the language of the statute or the Ninth Circuit's interpretation of the statute in Howard. The statute requires only that a pediatrician or other appropriate specialist "evaluate[] the case" of the minor

applicant; the statute does not require that a new case evaluation be developed after every addition to the applicant's medical record.  The Ninth Circuit held that a pediatrician or other appropriate specialist must review the applicant's medical record "in its entirety," but allowed that the ALJ may "achieve substantial compliance" with 42 USC § 1382c(a)(3)(I) by having a pediatrician or other appropriate specialist develop a case evaluation from less than the applicant's entire medical record.  Howard, 341 F3d at 1014.

If the ALJ in Howard "achieved substantial compliance" with 42 USC § 1382c(a)(3)(I) by having physicians review the applicant's case fifteen and twenty-five months prior to handing down his decision, the ALJ in this case certainly achieved "substantial compliance" with the statute by having Dr Grossman review Terrell's entire medical record available before the June 27, 2002, hearing, which was held five months before the ALJ handed down his decision.  To find otherwise would be to impose on the SSA the burden of having a pediatrician or other appropriate specialist review each minor applicant's entire medical record every time a new report or other development occurred.  Such a requirement would substantially increase the length and cost of determining whether a minor is disabled within the meaning of the Social Security Act. Each new medical report could delay the ALJ's determination and require further proceedings.

In this case, moreover, the argument for a new case evaluation is particularly unpersuasive because the conclusions set forth in the reports of Dr Mountain and Dr Koulianos are substantially similar.  When new reports substantially deviate from

17

previous reports, the applicant may present the new report to the Appeals Council, as plaintiff did in this case.  AR 192-93. Accordingly, the court holds that the ALJ did not commit legal error when he refused to have Dr Grossman conduct another case evaluation after Dr Mountain's report became available.

Similarly, the ALJ did not err by failing to have Dr Grossman review the October 23, 2002, IEP assessment.  Plaintiff submitted the IEP assessment to the Appeals Council on January 16, 2003, over one month after the ALJ rendered his decision on December 5, 2002.  AR at 194, 230-37.  The administrative record is silent on whether the ALJ even had notice of the assessment. Accordingly, it was reasonable that the ALJ did not have Dr Grossman review the assessment.

                                    IV

        For the foregoing reasons, the court affirms the ALJ's decision to deny benefits.  Accordingly, the court DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion for summary judgment.

        The clerk shall enter judgment in accordance with this order and close the file.

        IT IS SO ORDERED.

                                    _____
                                    VAUGHN R WALKER
                                    United States District Chief Judge

United States District Court
For the Northern District of California